## ROSASCO et al. v. PITCH PINE LUMBER CO.

(Circuit Court of Appeals, Second Circuit. April 19, 1905.)

### No. 167.

1. SHIPPING—CONSTRUCTION OF CHARTER PARTY—RIGHT OF CANCELLATION.

A provision of a charter party requiring the vessel to sail in ballast for the port of loading within 48 hours after notice from the charterer designating such port, is not a condition precedent, a breach of which entitles the charterer to cancel the contract, where there is a subsequent provision for a canceling date if the vessel shall not have arrived at the port of loading, and she arrives within the time so fixed.

2. SAME.

A vessel, then at Venice, was chartered "for a voyage from Ship Island or Pensacola, charterer's option, to Montevideo, * * * orders on signing B/L. Loading port to be named before vessel leaves Venice, but vessel to sail 48 hours after orders are given." *Held* that, in view of the situation of the parties when the charter was made, and of other provisions therein for dispatch, and fixing a canceling date if the vessel should not have arrived at port of loading, the clause requiring the vessel to "sail 48 hours after orders are given" applied to the orders given after the vessel was loaded, and not to the time she was required to sail from Venice after the naming of the port of loading.

Appeal from the District Court of the United States for the Southern District of New York.

On appeal from a final decree of the District Court for the Southern District of New York, entered May 13, 1904, in favor of the libelants for $2,561.80, damages for breach of a charter party. The facts are stated in the opinion below. 121 Fed. 437.

Charles C. Burlingham, for appellant.

J. Parker Kirlin, for appellees.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The charter party contained the following stipulation: "Charterers have option of cancelling charter if vessel

not arrived at loading port by Nov. 15th, 1901." The designated loading port was Ship Island, Miss. The vessel arrived there from Venice and reported for cargo November 12, 1901; three days before the charterer could cancel the charter, pursuant to the provision just quoted. On November 15th the agent of the charterer, having learned that the vessel had not sailed from Venice within 48 hours after Ship Island was designated as the loading port, served notice on the master that the charterer declined to load the vessel "owing to the violation of your charter party." This action was taken under the following language of the charter, which provided that the Italian bark Guilia R. was chartered by the Pitch Pine Lumber Company "for a voyage from Ship Island or Pensacola, charterer's option, to Montevideo, Buenos Ayres or Bahia Blanca, A. R., orders on signing B/L. Loading port to be named before vessel leaves Venice, but vessel to sail 48 hours after orders are given." Construing this language as requiring the bark to sail from Venice within 48 hours after notice of loading port was given, the District Judge, nevertheless, decided that the stipulation was not a condition precedent, the breach of which warranted the cancellation of the charter. In view of the subsequent provision for canceling the charter if the bark reached Ship Island after November 15th the judge decided that the failure to sail from Venice within 48 hours was the breach of an independent covenant which entitled the charterer to any damages it might have sustained thereby but did not give it the right to refuse the bark. The District Judge undoubtedly felt that the action of the respondent in declining to load the bark after she had crossed the ocean in order to keep her agreement and had arrived well within the stipulated time, ought not to be upheld upon a strained or doubtful construction of the charter and we agree with him in thinking that if the 48-hour provision related to the departure from the port of Venice it must yield to the plain and unmistakable provision regarding the cancellation of the charter. If the negotiations of the parties on this subject had not culminated in an explicit agreement there might be difficulty in sustaining the libelants' position. It seems to us that there can be little doubt as to the soundness of the proposition that the respondent could, if it so desired, cancel the charter if the bark arrived at Ship Island after November 15, 1901, but could not do so if she arrived prior to that date.

It must be conceded that if the foregoing interpretation be adopted the question is not entirely free from doubt; if, however, the agreement be construed to mean that the bark was to sail from the loading port (Ship Island) within 48 hours after receiving orders to proceed to the port of discharge, all difficulty as to the law is eliminated from the case. It is now contended, and it is asserted that the contention is made for the first time in this court, that the clause in question should be interpreted as follows:

"A voyage from Ship Island or Pensacola, charterer's option, to Montevideo, Buenos Ayres or Bahia Blanca, A. R., orders on signing bill of lading, but vessel to sail 48 hours after orders are given. Loading port to be named before vessel leaves Venice."

Bearing in mind that in construing these contracts the court should be guided by the intention of the parties we are strongly inclined to the opinion that the foregoing is the proper and natural interpretation of language which it must be admitted is inartistic and somewhat ambiguous. Our reasons for this conclusion may be briefly stated as follows:

First: It is an inaccurate use of language to describe the mere designation of the loading port as "orders." If the parties had intended that the 48-hour provision should apply to the situation at Venice they would have stipulated that the bark should sail "48 hours after notice of loading port is given," or "48 hours after loading port is named." On the other hand, "orders" was a most apt and appropriate word to describe the action of the charterer in directing the master's course after his vessel was loaded with the charterer's property and especially so when the parties had used the word in a precisely similar sense in the paragraph immediately preceding. When they speak of the loading port they used the word "named"; when they speak of the port of discharge they use the word "orders."

Second: Though the agreement was made July 31, 1901, it was not until August 14th that Ship Island was designated as the loading port, indicating that the charterer was not anxious to load the vessel before November. The provision for naming the loading port was manifestly for the benefit of the vessel, otherwise she might have been compelled to touch at Pensacola only to be informed that her cargo was to be received at Ship Island. The charterer was amply secured by other provisions, found in the printed part of the charter, providing that the vessel should "proceed with all possible dispatch from Venice to loading port." The charterer needed no other protection than this, coupled with its right to cancel if the vessel failed to report November 15th.

Third: It was for the interests of both parties that the vessel should have quick dispatch after receiving her cargo. Delay here might result most disastrously to the charterer, but unless the 48-hour provision applied to the loading port the charterer had no redress. No other clause of the agreement gives it.

Fourth: The language so often quoted was written in the printed form in place of other language which had been erased. The printed portions so deleted provide for a safe port of discharge "48 hours allowed awaiting orders at Montevideo." In short, the charter as originally printed provided that after the loaded vessel arrived at Montevideo 48 hours should be allowed awaiting orders to proceed to a safe port of discharge. It seems fair to assume that the words "vessel to sail 48 hours after orders are given" were intended as a substitute for the words so erased. Read in the light of what seems to have been the intent of the parties we are of the opinion that the charter did not require the bark to sail from Venice within 48 hours after receiving notice that the charterer had selected Ship Island as her loading port.

The decree is affirmed with interest and costs.